UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREEN ROAD INVESTMENTS #2, LLC,
*et al.,*

        Plaintiffs,

                              Case No. 09-13335
v.                              Hon. Gerald E. Rosen

CWCAPITAL ASSET MANAGEMENT, LLC,
*et al.,*

        Defendants.
_____/

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR RELEASE OF FUNDS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       October 22, 2009      

PRESENT: Honorable Gerald E. Rosen
                       Chief Judge, United States District Court

Plaintiffs Green Road Investments #2, LLC, Greenfield Lincoln Investments #2, LLC, and Victor Park Investments, LLC commenced this suit in state court on August 5, 2009, asserting state-law contract claims arising from certain loans made by Defendant Greenwich Capital Financial Products, Inc. ("Greenwich") to the Plaintiff firms in early 2007 to refinance certain commercial properties located in Ann Arbor, Livonia, and Oak Park. Defendants removed the case to this Court on August 24, 2009, citing diversity of

citizenship among the parties.[1]

Prior to removal, Plaintiffs filed an emergency motion for release of funds, requesting that Defendants be directed to release approximately $457,000 from an escrow account into which all rent and other monies received from tenants are being paid. In essence, this is the relief sought in Count III (breach of covenant of good faith and fair dealing) and Count IV (breach of contract) of Plaintiffs' complaint. For this and other reasons, Defendants argue that Plaintiffs' motion should be denied.

On September 23, 2009, the Court met with counsel for the parties to address Plaintiffs' motion and other matters in this case. At the Court's urging, and with the agreement of counsel, the parties met and conferred in an effort to resolve their dispute, but they have reported back to the Court that this effort was unsuccessful. Accordingly, the Court now proceeds to rule on Plaintiffs' motion. For the reasons set forth below, the Court finds that Plaintiffs have failed to establish a basis for awarding the preliminary relief sought in their motion.

## I. FACTUAL BACKGROUND

In February of 2007, Plaintiff Green Road Investments #2, LLC ("Green Road") borrowed $40 million from Defendant Greenwich, with this loan secured by a mortgage

---

[1] To be precise, three of the four Defendants — CWCapital Asset Management, LLC ("CWCapital"), Wells Fargo Bank, NA ("Wells Fargo"), and Wachovia Bank, NA ("Wachovia") filed a notice of removal. Under a stipulated order entered on September 3, 2009 and a subsequent order entered on September 30, 2009, the fourth Defendant, Greenwich, need not respond to the complaint until October 23, 2009. Greenwich nonetheless has filed a brief response to Plaintiffs' pending motion.

on three commercial properties located on Green Road in Ann Arbor (the "Ann Arbor Property"). At around the same time, Plaintiffs Greenfield Lincoln Investments #2, LLC ("Greenfield Lincoln") and Victor Park Investments, LLC ("Victor Park") borrowed $28 million from Greenwich, with this loan secured by a mortgage on commercial properties located in Livonia and Oak Park. The loan to Green Road was cross-defaulted and cross-collateralized with the loan to Greenfield Lincoln and Victor Park, meaning that a default under one loan would be deemed a default under the other. These loans, in pertinent part, are now held in a trust, with Bank of America currently serving as the trustee, Defendant CWCapital acting as "special servicer" for the trustee, and Defendant Wachovia acting as the "master servicer."[2]

    At the time the Green Road loan was made, the major tenants at the Ann Arbor Property were Pfizer, the University of Michigan, Toyota, and Structural Dynamics Research Corporation. Green Road alleges that it notified Greenwich prior to the February 2007 closing on the Green Road loan that Pfizer planned to move all of its operations out of Michigan, but that Greenwich nonetheless elected to proceed with the closing. Under the terms of the loan agreement, the Ann Arbor Property tenants paid their rent and other monies into a "lockbox" maintained at Fifth Third Bank, with Green Road allegedly retaining control over these funds so long as it was not in default on its

---

[2]Bank of America has not been named as a defendant, nor has the trust in which the loans are currently being held. Instead, Plaintiffs named the original trustee, Wells Fargo, as a defendant.

loan obligations. The occurrence of certain events, however, triggered a "cash trap condition," under which the servicer of the loan, Wachovia, could take control of the lockbox account and control the distribution of funds paid by tenants into the lockbox.

By letter dated May 25, 2007, Wachovia notified Fifth Third Bank that a "cash trap condition" had occurred, evidently relying on the anticipated departure of Pfizer as a basis for invoking this provision of the loan agreement. Plaintiffs question the validity of this claim, alleging that "Greenwich and its servicer, Wachovia, were using the Cash Trap Notice to put pressure on Green Road to modify the terms of the loan." (Complaint at ¶ 37.) Nonetheless, the parties negotiated and entered into a June 29, 2007 amendment to the Green Road loan agreement (the "First Amendment"), under which Green Road agreed to post letters of credit totaling up to $1.5 million that it could reclaim once it had re-leased the Pfizer space. This amendment also severed the $40 million loan into two promissory notes, in the amounts of $31,189,427 and $8,810,573, with both notes still secured by the Ann Arbor Property.[3] Finally, the parties agreed under the First Amendment to release the "cash trap condition."

Upon execution of the First Amendment in June of 2007, Green Road evidently provided $1.0 million of the $1.5 million in letters of credit referenced in this amendment. According to the complaint, Green Road anticipated that it would be able to re-lease the Pfizer space, and thus reclaim this initial $1.0 million letter of credit, because

---

[3]Defendant Greenwich sold its interest in the larger note to the above-cited trust, but maintains its interest in the smaller note.

it was expected that Pfizer would be willing to agree to an early termination of its lease and that the University of Michigan would likely lease this space. Yet, when Pfizer declined to terminate its lease, Green Road could not satisfy the conditions for reclaiming the $1.0 million letter of credit, and it also became obligated on December 31, 2007 to post an additional $500,000 letter of credit. Although Green Road did not post this additional letter of credit, it alleges that this apparently was acceptable to Defendants, as none of them complained or issued a default notice until nearly a year later, in November of 2008.

In December of 2008, Pfizer agreed to terminate its lease and paid Green Road a lump sum of just over $1.4 million. Green Road placed these funds in a separate bank account to be used to meet its obligations under the First Amendment, and it alleges that Defendants did not object to this arrangement. Once Pfizer's space became available, Green Road re-let 56 percent of the former Pfizer premises to a new tenant, ForeSee Results ("ForeSee"). According to Defendants, however, this tenant did not meet the criteria for a "credit tenant" under the First Amendment, nor did the lender approve or authorize the ForeSee lease as purportedly required under the First Amendment. Accordingly, in Defendants' view, Green Road remained obligated to post the additional $500,000 letter of credit that was due in December of 2007, and its failure to do so was an "event of default" under the First Amendment. Defendants further allege that Green Road was obligated under the First Amendment to pay over to the lender the $1.4 million

termination payment it received from Pfizer.

In February of 2009, Wachovia sent a default notice to Green Road, citing its failure to post the additional $500,000 letter of credit back in December of 2007.[4] It also sent a notice advising Green Road that the loan would henceforth be serviced by Defendant CWCapital. CWCapital, in turn, notified Fifth Third Bank, as custodian of the lockbox account into which tenant payments were being made, that it was exercising its right to control disbursements from the lockbox account, and that Green Road could no longer access the lockbox. Green Road alleges that CWCapital "has a self-interest in driving Green Road into default," (Complaint at ¶ 72), so that it can exercise an option to purchase the defaulted loan at a discounted price, and it further alleges that CWCapital has unreasonably and improperly refused to release certain funds from the lockbox account even though "no default actually exists." (*Id.* at ¶ 75.) In particular, Green Road cites CWCapital's refusal to release roughly $457,000 from the lockbox account to reimburse Green Road for amounts it has spent for tenant improvements and other charges, and it alleges that this refusal has impaired its ability to conduct its business and attract new tenants. In Counts III and IV of their complaint, Plaintiffs seek damages as a result of Defendants' refusal to release this sum from the lockbox account, and they seek through their present motion to secure the immediate release of these funds from the account while this litigation remains ongoing.

---

[4] A default notice also was sent to Greenfield Lincoln and Victor Park, citing the cross-default provisions of the loan agreements executed by these Plaintiffs.

Not surprisingly, Defendants dispute certain of these facts. Most notably, they contend: (i) that because they did not approve the ForeSee lease, they are not obligated to reimburse the $457,000 in tenant improvements and leasing commissions that Green Road has incurred in connection with this tenancy; (ii) that Green Road was properly declared to be in default under the First Amendment; (iii) that, in light of this default, the lender has sole and absolute discretion over the disbursement of funds from the lockbox account; and (iv) that even if the lender elected to exercise its discretion and disburse funds from the lockbox account, it could not be required to make any payments to Green Road, but instead is authorized under the underlying loan agreement and First Amendment to pay monies directly to contractors, suppliers, and the like. More generally, Defendants maintain that it would be unfair to release funds to Plaintiffs from the lockbox account when, in their view, Plaintiffs presently owe them (i) the additional $500,000 letter of credit that should have been posted back in December of 2007, and (ii) the approximately $1.4 million Green Road received in December of 2008 upon the early termination of Pfizer's lease.

## II.  ANALYSIS

Under familiar standards, the Court must consider four factors in deciding whether to award the preliminary relief sought by Plaintiffs: (i) whether Plaintiffs are likely to prevail on the merits; (ii) whether Plaintiffs will suffer an irreparable injury if the requested relief is not granted; (iii) whether the requested preliminary relief would cause substantial harm to others; and (iv) whether the requested preliminary relief would be in

7

the public interest. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994). Notably, in their initial motion filed in state court, Plaintiffs addressed none of these elements, nor did they otherwise identify any legal authority for the preliminary relief they seek. Rather, they first addressed the relevant standards in a reply brief they filed with this Court in support of their motion. As discussed below, Plaintiffs have failed to satisfy these standards for the issuance of preliminary relief.

As to the first factor, likelihood of success on the merits, Plaintiffs do not truly contest Defendants' assertion that Green Road has defaulted on one or more of its obligations under the parties' initial loan agreement and the First Amendment. Rather, they contend, in essence, (i) that Defendants effectively waived the requirement that Plaintiffs post an additional $500,000 letter of credit by failing to complain about this until nearly a year after the letter of credit was to have been posted; (ii) that, similarly, Defendants waived any opportunity to object to the ForeSee tenancy by remaining silent after being given notice of this tenancy; and (iii) that Green Road did not truly breach any obligation to turn over the $1.4 million lease termination payment it received from Pfizer, but instead has been applying a portion of this payment each month toward the monthly rental payments it otherwise would have received from Pfizer, with Defendants' knowledge and consent.

Similarly, while Plaintiffs seemingly acknowledge, at least for present purposes, that Defendants have the discretionary authority to control the flow of funds from the "lockbox" account, they nonetheless insist that Defendants must exercise this authority

fairly and in good faith, and they cite Defendants' purported failure to do so as a basis for their claim in count III of the complaint that Defendants have breached an implied covenant of good faith and fair dealing.  In particular, they contend that Defendants have "failed to articulate any good reason" for their refusal to release the $457,971 that Plaintiffs seek in order to pay contractors and suppliers for improvements made to the Ann Arbor Property.  (Plaintiffs' Reply Br. at 7.)

Under the present record, the Court cannot say that Plaintiffs have established a likelihood that they will prevail on these various theories of liability.  Plaintiffs do not claim a straightforward contractual entitlement to relief, but instead advance theories of waiver and lack of good faith in Defendants' exercise of their contractual rights and obligations.  In support of these theories, Plaintiffs rely almost exclusively on the arguments of counsel, and invite the Court to make preliminary findings of unfairness and bad faith based upon a small handful of e-mail messages exchanged by the parties.  Even then, this slender record suggests only that the parties have attempted to negotiate a resolution of their differences, and that Plaintiffs have been unwilling to accept certain conditions that Defendants would impose upon the release of funds from the escrow account.  The Court cannot conclude from this record that Defendants' actions and negotiating positions are apparently unreasonable, such that Plaintiffs are likely to prevail on their claim of a breach of an implied covenant of good faith and fair dealing.

Next, as to irreparable injury, Plaintiffs state that Defendants' failure to release the requested funds from the lockbox account has damaged their business relationships with

9

vendors and impaired their ability to place new tenants in the Ann Arbor Property. Yet, all of this seemingly would be remediable through monetary relief. Indeed, the proof that Plaintiffs have an adequate remedy at law seemingly is provided through the very relief they seek in the present motion — namely, a ***payment of money*** from the lockbox account. Even accepting that Defendants' withholding of these funds has harmed Plaintiffs and placed them in a precarious financial position, they have failed to persuade the Court that this injury is not compensable through an award of money damages.

More generally, Defendants correctly note the unusual nature of the relief sought in Plaintiffs' motion. Ordinarily, in a motion for preliminary injunctive relief, the moving party seeks an order that would preserve the status quo in some respect while the litigation is pending. Here, Plaintiffs do not seek to preserve the status quo, but instead request essentially the very same relief they would obtain if they were to ultimately prevail on counts III and IV of their complaint — namely, the release of roughly $457,000 in funds which Defendants allegedly are withholding in breach of a purported (albeit apparently only implied) contractual obligation. It is unusual, to say the least, to seek a preliminary award of breach-of-contract damages at the outset of a case.

Plaintiffs' only answer to this is that the relief they seek does not constitute the entirety of the ultimate relief sought in their complaint. Rather, they explain that no matter how the Court might rule on the present motion, there will remain issues to litigate under the other counts of their complaint — *e.g.,* whether they truly are in default under the loan agreement and whether the contract between the parties should be reformed due

10

to impossibility of performance or a mutual mistake. Be that as it may, it is clear that Plaintiffs *are* seeking an award of preliminary relief that is materially indistinguishable from the monetary relief they are requesting under counts III and IV of their complaint. Regardless of whether such an award would be permissible under the appropriate circumstances, the Court finds such relief unwarranted in this case.

Next, as to harm to others, Defendants argue that the funds sought by Plaintiffs will "never be seen again" if it turns out that Plaintiffs do not prevail on the relevant counts of their complaint. In response, Plaintiffs state that they are willing to enter into a stipulated order providing that the released funds may only be used to pay expenses for their operation of the Ann Arbor Property. Plaintiffs also assert that others (*i.e.,* vendors) will be harmed if the funds are not released and the vendors are not paid, and that their tenants also will be harmed if services to the properties are cut off for non-payment. On balance, the Court finds that this factor tends to support the award of preliminary relief sought by Plaintiffs.

Finally, as to the public interest, Defendants argue that no public interest is served by awarding Plaintiffs the relief sought in their complaint before they have prevailed on the merits of their claims. They further contend that no public interest is served by forcing them to surrender their contractual right to control the funds in the lockbox account in order to "bail out" a party that has failed to discharge its obligations under the parties' loan agreement. In response, Plaintiffs argue that the public interest "does not favor mortgage defaults or vacant buildings," (Plaintiffs' Reply Br. at 9), particularly

when these are caused by a lender that is exercising its power unreasonably. Under the present record, the Court cannot say that this factor tips decisively one way or the other.

Consequently, having considered all four factors governing the decision whether to award preliminary relief, the Court finds that the first two of these factors — likelihood of success on the merits and irreparable harm — militate strongly against the award of relief sought in Plaintiffs' motion. While the remaining two factors are more equivocal, the Court finds that these considerations do not outweigh or overcome Plaintiffs' failure to satisfy the first two elements of the standard for preliminary relief. Accordingly, Plaintiffs' motion must be denied.

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' motion for release of funds from escrow account (docket #12) is DENIED.


                s/Gerald E. Rosen
                Chief Judge, United States District Court

Dated: October 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 22, 2009, by electronic and/or ordinary mail.

                s/Ruth Brissaud
                Case Manager